IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DERRICK ANDRE CEPHAS          :
                              :
v.                            :   Civil No. WMN-04-2269
                              :
PEPSI BOTTLING GROUP, INC.    :

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment. Paper No. 24. The motion is fully briefed. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary and that the motion must be granted.

Plaintiff Derrick Cephas was employed by Defendant Pepsi Bottling Group, Inc. on March 31, 2000, and this suit arises out of that employment. After filing a charge of discrimination against Defendant with the Equal Employment Opportunity Commission [EEOC] and receiving a right-to-sue letter, Plaintiff filed suit in this Court on July 19, 2004, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. and 42 U.S.C. § 1981. In the original complaint, Plaintiff alleged that he was discriminated against on the basis of his race (African American) in that he was denied a promotion and harassed by his co-workers. He also alleged that he was retaliated against for filing the EEOC charge. After an incident between Plaintiff and his immediate supervisor, Cheryl Loy, that took place in August of 2004, Defendant terminated Plaintiff's employment. On February 22, 2005, Plaintiff amended his

complaint to include a claim of discriminatory and/or retaliatory discharge.[1]  Defendant has moved for summary judgment as to all counts.

**I. SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For purposes of summary judgment, a dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if, when applied to the substantive law, it affects the outcome of litigation.  Id.

A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When considering the motion, the court assumes that all

---

[1] Plaintiff filed this action pro se.  He was represented by counsel in this action for a brief period of time until he fired his counsel and brought suit against him.  See Cephas v. Coyle, Civil Action No. WMN-05-784 (D. Md.).  Plaintiff was again proceeding pro se by the time the amended complaint was filed and in opposing the instant motion.

of the non-moving party's evidence is worthy of belief and justifiable inferences are drawn in favor of the non-moving party.  <u>Matsushita Elec. Indust. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  If the movant demonstrates that there is no genuine issue of material fact and that she is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits or other documentation that demonstrates that a triable issue of fact exists for trial.  <u>Celotex</u>, 477 U.S. at 324.

**II. DISCUSSION**

    A. Promotion Claim

    To establish a failure to promote claim, a plaintiff must establish that (1) he was a member of a protected group; (2) he applied for and was qualified for the job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination.  <u>Amirmokri v. Baltimore Gas & Elec. Co.</u>, 60 F.3d 1126, 1129 (4th Cir. 1995).  Quite often, this fourth element is satisfied by demonstrating that the position is awarded to an individual from outside of the protected class who is less qualified than the plaintiff.  <u>See Obi v. Anne Arundel County, Md</u>, 142 F. Supp. 2d 655, 664 (D. Md. 2001).

    Plaintiff's promotion claim arises out of Defendant's

3

decision in June of 2002 to select Terry Seeders, a white employee, for a Lead Technician position.  Plaintiff states that he applied for the position along with seven other individuals, all of whom were white.[2]  Of the eight applicants, Plaintiff asserts that he was the most qualified, based upon: his two year college degree in Electronics Technology; his 15 years experience in the military working with electronics and mechanical systems; his 7 years of "supervisory and management experience;" his qualifications as a "Final Prep Vending Machine and Cooler Technician;" and his then current position as "Parts Technician," which he opines involves more knowledge of parts and components than a Final Prep Technician.[3]

Defendant has supplied substantial evidence, however, that Seeder was better qualified for the position than Plaintiff. Seeders had four years of experience as a vending machine technician with another vending machine company and had been employed by Defendant as a Final Prep Technician.  This experience made him familiar with the job duties of the majority

---

[2] In his opposition, Plaintiff asserts that all of the white applicants were interviewed for the position by the Facility Manager, Mike Van Hook, while he alone was not.  Opp'n 3.  In his deposition, however, Plaintiff acknowledges that at least one of the other applicants was not interviewed by Van Hook.  Pl.'s Dep. 117-18.

[3] As with most of Plaintiff's factual assertions, he offers nothing to establish these qualifications beyond his own statements in his affidavit in opposition to the motion.

4

of the employees with whom he would be working.  Although Plaintiff worked briefly as a Final Prep Technician when he first came to work for Defendant, he transferred shortly thereafter to the position of Parts Room Technician.  In his deposition, Plaintiff describes his duties as a Parts Room Technician as "[o]rdering parts, issuing parts, inventory, paying invoices, programming e-proms, stocking the shelves or stocking the parts locations.  That's about it."  Pl.'s Dep. 115.  As for Plaintiff's claim that he possessed "7 years of Supervisory and Management experience," that claim is belied by the fact that he did not relate that he had any supervisory or management experience in the application Plaintiff completed when he first applied for a position with Defendant.  See Def.'s Ex. 19.

Faced with evidence that clearly establishes that Seeders was better qualified than himself, Plaintiff offers nothing more than his own subjective opinion that he was better qualified for the position.  As noted above, much of the factual basis by which he attempts to support that opinion is contradicted by other evidence in the record.  Plaintiff's conclusory and self-serving assessment cannot alone establish his failure to promote claim. See Obi, 142 F. Supp. 2d at 664 ("Without some evidence that the failure to promote or hire was motivated by discrimination, a claim cannot proceed merely with the allegation of superior

qualifications.").[4]

### B. Hostile Work Environment Claim

To survive summary judgment on his claims of a racially hostile work environment, Plaintiff must demonstrate that a reasonable jury could find that he was subjected to harassment that was (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere.  See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998).  Furthermore, Plaintiff must come forward with sufficient evidence of a fourth element: that "there is some basis for imposing liability" on Defendant.  Id.[5]  Where the alleged harassers are the co-workers of the plaintiff, this last element is typically met by evidence that the defendant knew or should have known about the alleged harassment and failed to take appropriate remedial action.  Andrade v. Mayfair Management, Inc., 88 F.3d 258 (4th Cir. 1998).  Where the hostile environment is created by a supervisor with immediate (or successively higher) authority over the employee, courts have recognized an affirmative defense where an employer can establish that 1) the

---

[4] The Court notes that Plaintiff's self-assessment of his qualifications is particularly suspect.  In his video deposition, Plaintiff opined that he was considering applying for the position of President of the NAACP and opined that he was also qualified for that position.

[5] The elements are the same under either § 1981 or Title VII.  Causey, 162 F.3d at 804.

6

employer had implemented and disseminated a policy prohibiting conduct made unlawful by 42 U.S.C. § 2000e or 42 U.S.C. § 1981, and (2) the plaintiff unreasonably failed to file an internal complaint with the employer pursuant to that policy.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 756 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).

Predominately through Plaintiff's own deposition testimony, Defendant established that the harrassment experienced by Plaintiff mostly consisted of isolated instances where co-workers directed profanity at Plaintiff, often in response to Plaintiff's refusal to supply them with the parts that they needed to complete their job assignments.  In his deposition testimony, Plaintiff only attributes racial content to the remarks of a single co-worker, Dustin Howell, who, on occasion and when he believed that Plaintiff was out of earshot, referred to Plaintiff as a "Black bastard."  Pl.'s Dep. 164.  Plaintiff acknowledges that he did not timely report this particular incident to management because he "didn't want to rock the boat."  Id. 164-65.  Plaintiff also conceded that on several of the occasions when co-workers verbally harassed him and he did report the incident to management, management would counsel the co-worker.  Id. 176, 184.  On at least one occasion, the co-worker subsequently apologized to Plaintiff.  Id. 176-77.  In addition to the alleged verbal harassment, Plaintiff relates in his

7

deposition another incident when a co-worker pushed office supplies off of a desktop and onto his lap, and also avers that Seeders was "following [him] around during [his] shift." Id. 254.

Based upon Plaintiff's deposition testimony, there is no question that Plaintiff cannot establish a prima facie case of hostile work environment. The conduct of which Plaintiff complained in his deposition simply does not rise to the level of severe or pervasive. As this Court has noted, the standard for proving a hostile work environment is intended to be high. Chika v. Planning Research Corp., 179 F. Supp. 2d 575 (D. Md. 2002). Furthermore, the evidence shows that when Plaintiff did bring complaints to management, they took appropriate action.

To avoid the clear implications of his own deposition testimony, Plaintiff submits an affidavit in opposition to the motion for summary judgment that in several ways contradicts his deposition testimony.[6] Acknowledging, at least implicitly, that there are dispositive contradictions between statements he made

---

[6] In addition to statements that contradict his earlier testimony, Plaintiff includes in his affidavit unsupported conclusory statements as well as recitals of facts not relevant to this action. For example, Plaintiff relates that someone "sabotaged [his] paperwork resulting in a loss of company funds." Opp'n 4. In his deposition, however, he acknowledges that no adverse action was ever taken against him related to this issue and in fact, he was told by management not to worry about it, the paperwork was mishandled by others, and it was not Plaintiff's responsibility. Pl.'s Dep. 216-21.

8

in his deposition and statements made in his affidavit, Plaintiff is resigned to contend that "the deposition transcripts are flawed" and suggests that the court reporter (along with his own counsel and opposing counsel) engaged in "foul play."  Pl.'s Supplemental Mem. in Opp'n 2, 3.  Absent some concrete evidence of transcribal error or explanation as to why a court reporter would falsify a transcript, the Court simply cannot give credence to this rather remarkable accusation.[7]  Thus, the Court will disregard Plaintiff's affidavit to the extent it is inconsistent with his deposition testimony and finds that the remaining undisputed evidence supports the entry of summary judgment in favor of Defendant as to Plaintiff's hostile environment claim.  See Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (observing that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact" and then holding that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is

---

[7] Having reviewed the entire videotape of the second day of Plaintiff's deposition, the Court finds the videotape to be fully in accord with those portions of the transcript furnished to the Court.  Furthermore, the content of Plaintiff testimony in the videotape is consistent with his prior testimony as transcribed.

9

correct.").[8]

### C. Termination and Retaliation Claim

The facts surrounding Plaintiff's termination are largely undisputed.  On August 10, 2004, Plaintiff's supervisor, Cheryl Loy, spoke to Plaintiff about complaints she had received from technicians about Plaintiff's failure to fill their parts requests.  She instructed Plaintiff to begin delivering parts directly to the technicians.  Plaintiff's response was to accuse Loy of lying during an HR investigation earlier that year.[9]  Loy

---

[8] With his Opposition, Plaintiff also submitted the "Affidavits" of three other former employees of Defendant.  Pl.'s Ex. 5, 6, 7.  The "Affidavits" are form documents drafted by Plaintiff on which the affiant is given the opportunity to circle the number in front of various conclusory statements.  For example, all three affiants circled the statements "I have knowledge of a Hostile Environment toward Derrick A. Cephas," and "It is my opinion that [Defendant's] Management and Human Resources cannot be trusted to enforce rules and policy fairly."  These conclusory statements are devoid of factual support or detail.  The only affiant that added any significant factual detail to his affidavit was Frank Starr.  That detail, however, relates to Starr's contention that he (Starr) was treated unfairly, not Plaintiff. Pl.'s Ex. 7.  Furthermore, Starr's claims do not appear to be racially based, but arise out of an apparent confrontation with Seeders.  Regardless, as the "evidence" presented in these "affidavits" would not be admissible at trial, these affidavits cannot be used to defeat a properly supported summary judgment motion.

[9] Technically, there is a dispute of fact as to whether Plaintiff actually accused Loy of lying.  Again, however, the dispute only relates to which version of Plaintiff's testimony should be believed.  At one point in Plaintiff's deposition, he testified, "I believe that we were done discussing the complaints [against me] and then I told her that she lied."  Pl.'s Tr. 389 (emphasis added).  A few minutes later in that same deposition, Plaintiff denied accusing her of lying.

> Q. Do you recall telling her that she

10

denied having lied and, according to Plaintiff, Loy got red in the face and shouted at Plaintiff to "punch out and go home." Pl.'s Dep. 391.

Plaintiff's response to his supervisor's direct instruction was to insist that Loy put that request in writing and told her that, unless she did so, he would not leave. Id. 391-92.  Again,

---

> had lied in the HR investigation months earlier?
>
> A. I recall asking her why she lied during the HR investigation.
>
> Q. Okay.  You don't consider that an accusation?
>
> A. No.  I consider it a question.
>
> Q. And you expected her to accept the proposition that she had lied, is that what you thought?
>
> A. I didn't think anything.  I just asked her a question.
>
> . . .
>
> A. One is a definite and one is a maybe.
>
> Q. And which is definite?
>
> A. Calling somebody a liar is definite.
>
> Q. And asking them why they lied is a maybe?
>
> A. That's the way I see it.

Pl.'s Dep. 417-18.

according to Plaintiff, Loy told him that unless he left, she would have him carried out and he responded, "okay, where should I wait for them." Id. 396. He then returned to his desk and sent an email to Defendant's Senior Human Resources Manager, Richard Wallen, reciting his version of his encounter with Loy. Wallen spoke with Loy and then responded to Plaintiff by email:

> I just spoke with Cheryl and I disagree with your description of the events. You have decided to behave in an unprofessional manner at work and Cheryl was attempting to address this with you. When your behavior caused Cheryl to have concerns for the general safety of you and your coworkers, she suggested that it might be best that you go home until heads were more clear. She did not ask you to leave without punching out: and yes, she would have asked for assistance were you not to cooperate with her request to leave.
>
> That said, I have instructed Cheryl to communicate with you in writing, per your request. If you have any additional questions, please don't hesitate to reach out to me. Thanks.

Def.'s Ex. 11 (email from Wallen to Plaintiff, sent Aug. 10, 2004, at 6:40 PM).

Shortly thereafter, Loy sent Plaintiff an email at his workstation putting in writing her instructions regarding the delivery of parts to technicians. She also reiterated her concerns about Plaintiff's unprofessional behavior and the complaints made about him by his co-workers. She concluded,

> If you are unable to comply with the need to act with dignity or respect and/or need additional time to cool off, please feel free to punch out and leave as I suggested earlier.

12

>      If there is an issue with you following these
>      guidelines and this behavior continues, it
>      will lead to disciplinary action up to and
>      including termination.

Def.'s Ex. 12 (email from Loy to Plaintiff, sent Aug. 10, 2004, at 6:59 PM).

The following day, Plaintiff reported to work but failed to deliver any parts as instructed.  When Loy asked Plaintiff why he was not following her instructions, Plaintiff again asked her why she lied during the HR investigation.  In light of Plaintiff's refusal to carry out her instructions, Loy instructed Plaintiff to clock out and leave the facility, pending review by Human Resources.  Plaintiff refused to leave, again insisting that Loy put her request in writing.  Loy then called the police and had Plaintiff escorted out of the facility.

On August 23, 2004, Wallen sent a letter to Plaintiff informing him that his employment was being terminated, effective August 11, 2004.  Wallen explained,

>      Given the clear instruction that you received
>      that day and the feedback that you received
>      the day prior when you behaved in a similar
>      manner, you are being terminated for
>      insubordination.
>
>      In particular, your manager, Cheryl Loy,
>      asked you to do things that are a normal part
>      of your job; but instead of just doing them,
>      you forced her to put the request in writing
>      and then you deliberately worked at a pace
>      that was painstakingly slow.  Furthermore,
>      when your behavior persisted to the point
>      that Ms. Loy instructed you to punch-out at
>      the time clock and go home, you refused.  By
>      so doing, you created a hostile working
>      environment, one in which Ms. Loy and others

>           felt threatened by your presence.  Your
>           behavior caused us to ask the Police escort
>           you out.

Def.'s Ex. 13.

Despite this largely uncontested account of the events leading to his termination, Plaintiff argues that his termination was because of his race or, in the alternative, was in retaliation for his filing this lawsuit.  See Opp'n 7-9.  To establish a prima facie case of discriminatory discharge under Title VII or § 1981 in this context, Plaintiff would need to establish that (1) he is a member of a protected class; (2) he was qualified for the job and his job performance was satisfactory; (3) he was terminated; and (4) other employees outside the protected class were retained under apparently similar circumstances.  See Hughes v. Bedsole, 48 F.3d 1376, 384 (4th Cir. 1995) (applying similar state statute).  To establish a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.  Causey, 162 F.3d at 803.

Should Plaintiff establish either prima facie case, the burden would shift to Defendant to provide a legitimate nondiscriminatory explanation for Plaintiff's termination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

14

If the employer provides such an explanation, Plaintiff must then prove by a preponderance of evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination; that is, Plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that employer's proffered explanation is unworthy of credence.  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).

The Court does not need to reach the issue of whether Plaintiff has established a prima facie case of discriminatory or retaliatory discharge in that the record unequivocally manifests that Defendant had a legitimate reason for terminating Plaintiff's employment.  Having reviewed that portion of Plaintiff's deposition in which he recounts his actions on August 10 and 11, 2004, the Court can only conclude that Defendant justifiably terminated Plaintiff for flagrant insubordination.  In fact, listening to Plaintiff's account, it is surprising that Defendant allowed Plaintiff to return to work after the events of August 10, 2005.

### III. CONCLUSION

For the above-stated reasons, the Court finds that Defendant is entitled to summary judgment as to all counts.  A separate order consistent with this Memorandum will issue.

_____
William M. Nickerson
Senior United States District Judge

Dated: December 6, 2005